

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

February 24, 2020

<u>**BY ECF AND HAND DELIVERY**</u>
The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      **Re:**    *United States* v. *Brendan Vaughan*, 19 Cr. 526 (KMK)

Dear Judge Karas:

      The Government respectfully submits this letter in advance of the sentencing of defendant Brendan Vaughan ("Vaughan" or the "defendant"). The defendant is scheduled to be sentenced on February 27, 2020, at 2:00 p.m. for his offenses in this case: namely, making three separate threats to classmates and law enforcement to execute a school shooting, in violation of Title 18, United States Code, Section 875. The Government writes in advance of sentencing and in response to the defendant's sentencing submission, dated February 21, 2020.

      As detailed herein, the defendant's criminal conduct is deeply troubling and has had a devastating impact on an entire community.[1] The Government therefore respectfully submits that an above-Guidelines sentence, to be followed by concurrent terms of supervised release, is a fair and appropriate sentence for the defendant. As discussed below, this sentence is necessary for the following reasons: (1) to reflect the egregiousness of the offense conduct and to provide just punishment; (2) to protect the victims and the public from future crimes by the defendant; (3) to deter the defendant from continuing to make threats towards the victims and others; and (4) to promote respect for the law prohibiting the making of interstate threats, and to deter individuals similarly situated to the defendant from committing such crimes.

**A.**     **Background**

      **1.**     **The Offense**

      Beginning in May 2018, and continuing over a period of months**,** the defendant intimated to classmates and law enforcement that he intended to execute a school shooting, and appears to have taken preliminary steps toward carrying out such an attack. The defendant's threatening conduct continued even after being interviewed by law enforcement, arrested and charged by state

---

[1] Various victims submitted Victim Impact Statements to the Court, which are attached to the Government's sentencing submission as Exhibits A to J. Some of these victims also plan to address the Court directly at the defendant's sentencing on February 27, 2020.

authorities, and arrested and charged federally for the instant offenses. As detailed below, and as evidenced in the Victim Impact Statements, ever since his initial threats, the defendant has terrorized the Washingtonville, New York community.

### a. Pre-Federal Arrest Conduct

Vaughan's troubling conduct began on May 9, 2018, when he sent threatening messages to other students at Washingtonville High School in Orange County, New York (the "May 9 Messages").[2] (PSR ¶ 30). Specifically, Vaughan wrote the following to a group chat on the messaging platform Snapchat, which included one of his classmates ("Victim-1"):

- "I need to ask everyone in the chat a complete hypolatical [sic] question."
- "If my dumb friend left a note in the school bathroom saying he was going to shoot the school up what do you think the result would be. And he left it where someone would see it"
- "It's a prank"
- "The kid would"
- "Na my friend wants to do it on his last day since he's a senior"
- "I'll tell u the name he was planning on typing the note and wearing gloves so they can't get his fingerprints on it and going into the bathroom next to a picture of Dylan Klebold and Eric-Harris[3] on the last day just to see what would happened"

(*Id.*).

After receiving reports of the messages, a law enforcement officer with the Washingtonville Police Department ("WPD") interviewed the defendant. (*Id.* ¶ 30). During this interview, the defendant stated, among other things, that (1) the Snapchat account used to post the May 9 Messages was his own and that he wrote the May 9 Messages; (2) he owns the Instagram accounts with the user IDs "dylanklebold27" and "ericharris5," the latter of which has an account profile stating: "Columbine High School '1999, Me and Dylan VS [World Symbol]"; and (3) he wanted to hold a particular student at his high school, ("Victim-2") up to a window and use him as a human shield. (*Id.*). Law enforcement officers also reviewed the defendant's internet search history on his iPhone, which included (1) ten separate searches for "pipe bombs," (2) a search for "mass shootings in America," (3) a search for "Mass shootings in the United States," and (4) a series of specific searches related to particular mass shootings in Texas and elsewhere. (*Id.* ¶ 31).

Over the ensuing weeks, the defendant made at least one additional social media post about a school shooting, posting a photograph of a television displaying CNN coverage of the May 18, 2018 school shooting in Sante Fe, Texas along with the text "This is why you don't bully folks." (*Id.* ¶ 32). On May 28, 2018, Vaughan then posted (in the form of Snapchat Stories) various messages, including (i) "When is the last day of classes?"; (ii) "I can't wait until that night I get in my car, with all my valuables and childhood stuff I want to take with me, 5 thousand dollars and

---

[2] Although his outwardly facing conduct appears to have begun on May 9, the defendant searched "How to survive a school or office shooting" on April 30, 2018.

[3] Dylan Klebold and Eric Harris carried out the shooting at Columbine High School in Columbine, Colorad0, on April 20, 1999.

my clothes and drive out of here to Littleton Colorado[4] and NEVER COME BACK HERE"; (iii) "There is absolutely zero justice in this world [world emoji] Fuck everyone and Fuck everything" (The background image contained a television with Vaughan displaying his middle finger in its direction); and (iv) "I'm going to start acting like a physopayh [sic] just not giving a fuck about anything." (*Id.*).

Then, on May 30, 2018, the defendant searched "nikolas cruz"[5] on Google and then accessed the webpages for two videos on YouTube. (*Id.* ¶ 33). One of the videos is an interview with Sky Bouche, the individual who carried out the shooting at Forest High School in Ocala, Florida, on April 20, 2018, in which Bouche indicated that he obtained the weapons for the Forest High School shooting from armslist.com. (*Id.*). Minutes later, the defendant accessed the webpage for armslist.com.[6] (*Id.*). The defendant acknowledged that he was at least 18 years of age, and then, after limiting his search queries to New York listings, clicked on a classified advertisement for a Smith and Wesson "MP15" that was being sold by a seller in Syracuse, New York. (*Id.*).

On the following day, May 31, 2018, the defendant sent Victim-1 a series of messages (the "May 31 Messages") over Snapchat, as follows:

> Vaughan: "Wat would u do if someone shot up the school tommorow [sic]?"
> Victim-1: "Omg"
> Vaughan: "I'm just curious"
> Vaughan: [Attached a photograph displaying what appeared to be a black shotgun laying on top of a camouflage vest with ammunition pouches, a Kevlar helmet, and a box of slug ammunition].
> Victim-1: "Now tell me the name of the kid"
> Vaughan: "I'd rather not"
> Vaughan: "You have a class with this person that is all I will say"
> Victim-1: "No"
> Vaughan: "I'm surprised"
> Victim-1: "His full name"
> Vaughan: "Rick W Weston"[7]
> Vaughan: "I need a gun"
> Victim-1: "It was good"
> Victim-1: "What u need a gun for?"
> Victim-1: "U don't need one"

(*Id.* ¶ 34).

---

[4] Columbine High School is located in Littleton, Colorado.

[5] Nikolas Cruz carried out the shooting at Marjory Stoneman Douglas High School in Parkland, Florida, on February 14, 2018.

[6] Armslist.com is a website that allows users to buy, sell, and trade firearms.

[7] "Rick W Weston" does not appear to be a student at Washingtonville High School, nor has the investigation revealed anyone with that name with any relationship to Vaughan.

In a subsequent interview with law enforcement, Victim-1 stated that she took screenshots of the May 31 Messages and that she understood the defendant to be communicating a threat of violence.  (*Id.* ¶ 35).  Victim-1 explained that after she had taken the screenshots (which Vaughan could see), Vaughan asked her why she had done so and asked her "not to go to the cops."  (*Id.*).  Victim-1 said that she was afraid of Vaughan because he might retaliate against her and because she thought Vaughan might harm their fellow classmates.  (*Id.*).

On June 3, 2018, law enforcement executed a search warrant at the defendant's house and found, among other things, notes the defendant had written, including what appeared to be a list of his favorite mass shooters and numerous references to his imminent "revenge."  (*Id.* ¶ 36).  In particular, the notes included the following passages[8]:

- "Monday.  Hello, Today marks the two week notice of my revenge.  ~~Wheter~~ This event is up to FATE and happens these next two weeks.  I'll elaborate on what my revenge is and why and how tomorrow."
- "[Dated May 25, 2018] In a little over a ~~week fr~~ week from today I will get my <u>Revenge</u>.  There is many factors in ~~whether~~ how this will all go down its up to FATE.  I have been a Victim of this fucked up system but I will take control and get my revenge.  Love VEB"
- "Today is one week.  one more week until my revenge.  I was thinking, why am I so unlucky, does God hate me because I was concieved if so fuck him.  ~~One~~ two week.  Love Veb.  KILLER"
- "Top 5 Fav (MS(PS) 1) Eric Harris 2) Dylan Klebold 3) Nikolas Cruz 4) Adam Lanza 5) Randy StaiR"[9]

(*Id.* ¶¶ 37-40).

The search also yielded a book titled "Boston Marathon Bombing," with a bookmark placed on a section titled "Making A Plan," as well as what appeared to be sketches of the defendant's classroom and classroom chairs (the "Classroom Sketch," attached hereto as Exhibit K).  (*Id.* ¶ 41).  On the back of the classroom sketch, the defendant appeared to have written the names of four classmates in his grade at Washingtonville High School (in addition to Victim-2, "Victim-3" "Victim-4," and "Victim-5").[10]  (*Id.*).

---

[8] The errors, strike-throughs, and capitalization from the handwritten notes are presented verbatim.

[9] Each of these individuals committed or is accused of having committed a mass shooting.

[10] On the classroom diagram there were two seats circled: one seat circled with the word "Me" written next to it, the other circled with the word "Him" written next to it.  Based on an interview with Victim-2, it appears that the circle with the word "Me" corresponded to the defendant's seat in the classroom, while the circle next to the word "Him" corresponded to Victim-2's seat.

Following the search, the defendant was arrested on state charges.[11]  (*Id.* ¶ 42).  Shortly after being arrested, he told a law enforcement officer, in substance and in part, that there was a pipe bomb in his room in a light blue box underneath his bed.  (*Id.*).  Shortly thereafter, the defendant admitted to another law enforcement officer that there was no pipe bomb in his home. The defendant also told the law enforcement officer that his "plan was to follow [Victim-2] into his classroom and kick all the girls out and put all the boys against the windows so I can't get shot by the police, then kill him."  (*Id.*).

In August of 2018, the defendant resumed his threatening behavior and sent a number of alarming messages (the "August Messages") on Snapchat.  (*Id.* ¶ 43).  Specifically, on August 7, 2018, the defendant posted: "I regret nothing."  (*Id.*).  Three days later, on August 11, 2018, he posted a graphic that included the text "The 845" (that is, the designated area code for Hudson Valley) and a series of 15 gun and bomb emojis.  (*Id.*).  Then, on August 13, 2018, the defendant posted a video depicting a red plastic gas container and then panning over what appeared to be pool chemicals.  (*Id.*).  The post included the following emojis (in brackets) and text: "[smiley face emoji] Plans [smiley face emoji] bang.bang."  (*Id.*).  About ten minutes later, he posted a video of himself in a car where he is turning the car on and clutching the steering wheel.  (*Id.*).

On November 19, 2018, the defendant was charged by Complaint with making threatening interstate communications, in violation of Title 18, United States Code, Section 875.  (Docket No. 2).  On November 21, 2018, the defendant was arrested and presented before the Honorable Judith C. McCarthy, United States Magistrate Judge.  (Docket No. 4).  The Government and defense counsel agreed to a bail package, which included a number of strict conditions that were adopted by the Court.  (*Id.*).  On March 12, 2019, following months of threatening conduct detailed below, the Honorable Lisa Margaret Smith, United States Magistrate Judge, revoked the defendant's bail on consent and ordered the defendant detained at the Metropolitan Detention Center ("MDC"), where he would receive a psychiatric exam.  The defendant has been detained since that date.

b.      **Post-Federal Arrest Conduct**

Following his November 2019 arrest in this case, the defendant continued his threatening behavior—both while released on bail and after being detained in March 2019.  While on bail, the defendant repeatedly violated the conditions of his release, including by possessing electronic devices, taunting law enforcement on social media, and threatening medical personnel.  Similarly, when he was detained, he made additional threats toward victims and law enforcement and continued researching school shooters.  A summary timeline of the defendant's post-arrest conduct—which highlights both the breadth and scope of his troubling behavior—is presented below.

- On December 6, 2018, law enforcement agents interviewed a patient at Four Winds Hospital ("Four Winds") who overlapped with the defendant when he stayed at the hospital following his state arrest (as part of a voluntary stay).  According to this

---

[11] The defendant was charged by the Orange County District Attorney's Office with making a terroristic threat, in violation of New York Penal Law Section 490.20.  The defendant's state case is still pending.

patient, the defendant made statements to other patients noting, in substance and in part, that he was going to take an Uber with black bags to a church, six miles from his house.[12]  (PSR ¶ 10).   Moreover, a journal recovered from the defendant's bedroom during his November 20, 2018 arrest in this case included mileage calculations to specific locations from his house, including a church and the Washingtonville Police Department.  (*Id.*).

- On December 23, 2018, the defendant went to a mall and was in a T-Mobile store with an iPhone, in violation of his pretrial release condition that prohibited him from being in possession of any cellular telephone without the advance permission of Pretrial Services.  (*Id.* ¶ 11).

- On December 24, 2018, the defendant called 911 and played what sounded like gunfire bursts.  A few minutes later, the defendant called 911, identified himself, and said, in substance and in part, that he accidentally called 911 because he was "pissed off."  New York State Police ("NYSP") responded to the scene and the defendant was the only one at his residence.  During their visit to the defendant's residence, the responding officers noticed a toy shotgun that they believed he was using at his window (although it was a cold day, the window was open and the shades were pulled down) when they responded to the 911 call.  (*Id.* ¶ 12).

- On December 27, 2018, the defendant posted the following messages on social media: (i) "The Washingtonville police department are idiots [Hacked]" and (ii) "Orange county law enforcement is not on brendans level [emoji] [Hacked]."  (*Id.* ¶ 13).

- On December 28, 2018, law enforcement agents conducted an interview with a friend of the defendant who said that the defendant had told him that the defendant could remove his ankle bracelet.  (*Id.* ¶ 14).

- On December 30, 2018, the defendant called WPD's main line and hung up. WPD and NYSP Troopers responded to the defendant's residence. The defendant initially lied, claiming that he had not placed the call.  He later said that he called because he wanted to report a crime, but hung up because he changed his mind.  (*Id.* ¶ 15).

- On December 31, 2018, the defendant posted a photograph of what appeared to be the defendant's leg with an attached GPS monitoring bracelet.  The posting included the text: "Thank god this year is over.I just want my case to be over get probation and youthfull offender so I can move on with my life."  (*Id.* ¶ 16).

- On January 7, 2019, Pretrial Services conducted a search of the defendant's residence and recovered two electronic devices.  The defendant admitted to posting on social media as well.  (*Id.* ¶ 17).

---

[12] Open-source materials report that Nikolas Cruz, the Marjory Stoneman Douglas High School shooter, took black bags in an Uber to the shooting.

- On January 28, 2019—after his initial bail terms had been modified and he was residing at Four Winds[13]—the hospital advised Pretrial Services of an incident where the defendant was hiding in the woods and calling out for law enforcement to arrest him. Hospital staff also reported that the defendant had discussed the possibility of escaping and leaving without obtaining medical clearance.  (*Id.* ¶ 102).

- On March 2, 2019 and March 10, 2019, a Pretrial Services Officer spoke to a nurse at Four Winds Hospital.  The nurse said that the defendant was (i) hiding one of the batteries for his GPS device, which he was wearing as a condition of is being released on bail; (ii) that he refused to change the GPS device battery; and (iii) that hospital staff had been unable to locate the GPS device battery.  (*Id.* ¶¶ 9, 102).

- On March 6, 2019, a Pretrial Services Officer spoke to a doctor at Four Winds, who indicated that the defendant had been threatening staff at the hospital and advising specific staff members that they were on his "hit list."  (*Id.* ¶ 18).

- According to the defendant's discharge summary from Four Winds, while at the facility, the defendant "continued to engage in non-compliance behaviors on the unit as well as continue[d] to lie to the treatment team and staff and manipulate the system." The report also noted that Vaughan was "superficially engaged in treatment" and "struggled to be medication compliant.  He would spit out his medications and at times refuse to take them."  (*Id.* ¶ 102).

- During the evening of May 14, 2019, while the defendant was detained at MDC, AUSA Samuel Adelsberg received a telephone call from the defendant,[14] who immediately hung up.  (*Id.* ¶ 21).

- According to the records of the Bureau of Prisons, the defendant abused his phone privileges on May 22, 2019, June 3, 2019 and on June 5, 2019, and was sanctioned for these incidents on June 20, 2019.  (*Id.* ¶ 20).

- While incarcerated at MDC, the defendant made a "kill list," and expressed a desire to speak with someone outside of MDC to help him achieve his plans.  The defendant's targets included Victim-1, Victim-2, AUSA Adelsberg, FBI Special Agent Melissa Zachariades (the case agent on this case), Pretrial Services Officer Leo Barrios, Dr. Sarah Klagsbrun, a doctor at Four Winds Hospital who treated the defendant, and members of the defendant's family, including his parents.  (*Id.* ¶ 22).

---

[13] The defendant was hospitalized at Four Winds from November 28, 2018 to December 3, 2018 and then again from January 7, 2019 until March 12, 2019.

[14] When AUSA Adelsberg answered the call, an automated voice indicated, in substance and in part, that the caller was "Brendan Vaughan, an inmate at the Metropolitan Detention Center."

- On June 2, 2019, the defendant—through an intermediary—conducted Google searches for the following terms: (i) "CALIFORNIA SCHOOL SHOOTING," and (ii) "NIKOLOUS CRUZ."[15]  (*Id.* ¶ 23).

- On September 30, 2019, the defendant sent an email to his mother, in which he wrote: "my judge even thinks my case is a load of bullshit."  (*Id.* ¶ 24).

- On October 26, 2019, the defendant wrote an email to his mother, in which he said that he "didn't even do anything" to deserve becoming a felon and blames his arrest on "that fucking bitch[,]" which, from the context, appears to be a reference to FBI Special Agent Melissa Zachariades.  (*Id.* ¶ 26).

**2.      The Defendant's Conduct Has Significantly Impacted the Victims**

As set forth in the PSR and as detailed in the Victim Impact Statements, the defendant's conduct since May 2018 has terrorized the Washingtonville, New York community.  Below is a sampling of some of the victim's statements:

- Brian T. Connolly (principal of Washingtonville High School):  "When the [defendant's] threats against our school were discovered, it impacted everyone in our community. Parents, staff and students were terrified. These threats forced the district to take extraordinary precautions for safety while the student was out on bail. The precautions and costs were nothing in comparison to the fear, stress and anxiety this caused everyone. For those students who were the primary targets as well as their parents, the stress level was, and continues to be, unimaginable."  (Ex. A).

- Victim-2 (former student at Washingtonville High School): "The FBI told my parents and I [sic] that I was a target in a planned attack by the defendant. I have never felt unsafe in my own town until that moment. Although, I wasn't completely shocked because of things that Brendan had done leading up to this event. It was soon after this that I started becoming very anxious. I had never struggled with anxiety, so it was very scary. I thought about this often; it was always on my mind. I was constantly looking over my shoulder and checking my surroundings more than usual."  (Ex. B).

- Father of Victim-2: "[Brendan's conduct] struck so much fear and anxiety into my everyday life that I was forced to leave my job as a top salesman in Manhattan to work in Orange County to be closer to my family in the event the defendant's threats became a reality. The financial burden leaving NYC along with multiple trips to the cardiologist and gastrologist during these last couple years have been unimaginable."  (Ex. C).

---

[15] As described above, Nikolas Cruz carried out the shooting at Marjory Stoneman Douglas High School in Parkland, Florida, on February 14, 2018.

- Mother of Victim-2: "These events have had an extreme impact on my life in so many ways. My family is suffering. My son has recently shared with me that he has been dealing with a tremendous amount of anxiety. There have been times when he is unable to concentrate because it's all he can think about."  (Ex. D).

- Victim-3: "When my friends and me had been followed by an account that was named after one of the columbine shooters I knew it was something we shouldn't just let go. When I reported it to the school I wasn't sure what it was going to lead to, but I knew it was the right idea. It was only days later when everyone had found out the news that left the small town of Washingtonville completely terrified."  (Ex. E).

- Mother of Victim-3: "Since this all started in [Victim-3]'s senior year of high school, the fear of my son being threatened were all surreal. As our family prepared for happy and proud memories, we were forced into fear, anxiety, and painful thoughts. We were afraid to be alone in our own home. Afraid to let [Victim-3] go to school. What should be a safe place for our children we now feared could turn into a massacre."  (Ex. F).

- Victim-4: "Hearing what law enforcement had discovered, was the scariest thing I have ever gone through in my life by far. At this point in my life I went from feeling safe everyday, having little to no worries, to having fear at all times and suffering from large amounts of anxiety to the point where I have had to attend therapy. Never have I been so stressed and worried like I have been for the past year and a half and honestly I don't know when it will stop. My family and I haven't been able to take a deep breath since hearing the news back in May of 2018. Not only could my friends and I have been harmed, but this situation had the chance to be a catastrophe to all of Washingtonville High School."  (Ex. G).

- Mother of Victim-4: "In the minutes that followed, our lives went from peaceful and innocent to fearful and anguished. The details of what had been carefully-plotted was absolutely frightening. As a NYPD detective myself for 19 years, I'm well-versed in these dark realities; my sense of security and peace of mind has been taken from me and my family because of Brendan Vaughn- so much so that both my children were in therapy to address their anxiety and related issues. I sincerely believe that if this plot was not brought to the attention of law enforcement, the lives of more innocent people would have been affected."  (Ex. H).

Simply put, the defendant's actions have exacted a steep emotional, physical, and professional toll on the victims. Nor have his victims taken much comfort from his incarceration, as the defendant has continued his threatening behavior from his prison cell.  To the contrary, several of the victims have expressed to the Government their fear that Vaughan will return to their community and terrorize them when he is released, as he appears not to have been rehabilitated or deterred in the more than fifteen months since his arrest in this case.

### 3.    The Defendant's Plea and Guidelines Range

On July 22, 2019, the defendant waived indictment and agreed to the filing of an Information charging him with three counts of making threatening interstate communications, in violation of Title 18, United States Code, Section 875.  (Docket No. 34-35).   On December 3, 2019, the defendant pleaded guilty to the three-count Information pursuant to a plea agreement (the "Plea Agreement").

### 4.    The Probation Department's Recommendation

Consistent with the Plea Agreement, the Probation Department calculates the defendant's Sentencing Guidelines range to be 24 to 30 months' imprisonment, based on a post-acceptance offense level of 17 and a criminal history category of I.  (PSR ¶ 113).   The Probation Department recommends an incarceratory sentence of 60 months' imprisonment—30 months above the top of the applicable Guidelines range—explaining:

> After the defendant's arrest, he was afforded the opportunity to make a positive change in his life. Vaughan chose to ignore the emotional and medical assistance he was provided by Pretrial Services and medical staff, even after being brought before the Court for violation proceedings. His non-compliance with pretrial supervision demonstrates that he is not a good candidate for community-based supervision at this time. Additionally, while he was incarcerated, Vaughn continued with his antisocial behavior and wrote a "hit list," which included the names of the FBI agent, his peers, his pretrial services officer, his parents, his sister and his medical doctor. This type of behavior demonstrates that Vaughan has a complete disregard for the law and the mental and physical welfare of others.

(PSR p. 23).  The Probation Department also notes the defendant's high risk of recidivism and the need to protect the victims:

> Based on the above, it appears that the defendant is at a high risk for recidivism. It is respectfully recommended that Vaughan be sentenced to a term of 60 months' imprisonment. This term of imprisonment will punish the defendant for his illegal actions, provide deterrence and most importantly protect the victims and the community. Pursuant to 18 USC 3771, the victims have a right to be protected from the defendant, and a term of imprisonment above the guidelines range will hopefully provide the victims with a sense of security during his time of imprisonment. Additionally, a term of imprisonment, will hopefully allow the defendant an opportunity to wholeheartedly engage rehabilitative treatment.

(PSR p. 24).  Finally, the Probation Department recommends a set of special conditions (in addition to the standard conditions) which the Government supports, including participation in a mental

health treatment program,[16] no contact with any victims in this case, that the defendant be subject to computer and internet monitoring administered by Probation (including unannounced examinations), as well as a search and seizure condition for the defendant's computer and other electronic devices.  (*Id.* at 26-27).

### 5.    The Defendant's Sentencing Submission and Objections to the PSR

The defendant filed his sentencing submission on February 21, 2020.  (Docket No. 50 ("Def. Mem.")).  In his letter, the defendant requests a sentence of time served.  (*Id.* at 1).  The defendant's request is based largely on his mental health issues, his age, and his assertion that he does not pose a danger to the community.  (*Id.* at 5-15).

The defendant also submitted a separate letter objecting to the inclusion of certain facts in the PSR and seeking to clarify other facts set forth in the PSR.[17]  (Docket No. 51 ("Def. Objections")).  Specifically, the defendant asserts the following objections to the PSR:

(i)     The defendant denies making statements to another patient at Four Winds that he (the defendant) was going to take an Uber with black bags to a church, six miles from his house, as reflected in paragraph 10 of the PSR.  (*Id.* at 2).

(ii)    The defendant denies that he threatened staff at Four Winds, and denies that he advised specific staff members that they were on a hit list, as reflected in paragraphs 18 and 47 of the PSR.  (*Id.* at 2-3).

(iii)   The defendant denies that he made specific, documented threats to kill various individuals while detained and MDC and expressed a desire to speak with someone outside of the jail to help him achieve his plans, as reflected in paragraphs 22 and 48 of the PSR.  (*Id.* 2-3).

(iv)   The defendant denies that he told a law enforcement officer on June 3, 2018 about his plans to kill Victim-2, as reflected in paragraph 42 of the PSR.  (*Id.*).

### 6.    The Defendant's Factual Objections Are Meritless

The Government notes at the outset that the defendant's objections to the PSR—which were provided to the Government less than a week before the sentencing—are two weeks late.  *See* Fed. R. Crim. Pr. 32(f)(1) (objections must be made within 14 days of receipt of the PSR). Nevertheless, because the Court has the independent obligation to resolve any disputed issues of fact, pursuant to Rule 32(i)(3), the Government addresses the substance of the defendant's objections herein.  The Government does not believe that a *Fatico* hearing is necessary given the current record before the Court but, to the extent that the defendant maintains his objections, and in the event that the Court would find it helpful in reaching its sentencing determination, the Government is prepared to prove the facts set forth below in a hearing by a preponderance of the

---

[16] Although the Probation Department only recommends participation in outpatient mental health treatment, the Government respectfully submits that, due to the unique circumstances presented in this case, in-patient mental health treatment is necessary.

[17] Although the defendant lodges objections to a number of other facts presented in the PSR, the Government is only responding to what it considers to be material issues subject to factual dispute.

evidence.[18]  *See generally United States v. Ambrosio*, 129 F.3d 114 1997 WL 701368 (2d Cir. 1997)  (summary order) (noting that the "sentencing court is afforded broad discretion in resolving disputed factual issues, including the discretion to decide whether a hearing is necessary and how such a hearing should be conducted."); *see also United States* v. *Reese*, 33 F.3d 166, 174 (2d Cir. 1994) ("[W]hen determining sentence, a sentencing court is free to consider hearsay evidence, evidence of uncharged crimes, dropped counts of an indictment and criminal activity resulting in acquittal.").

### (i)    *The Defendant's Statements to Another Patient at Four Winds*

In December 2018, while the defendant was a patient at Four Winds, he approached another patient at the facility ("Patient-1"), who also is the mother of a fellow student from Washingtonville High School.  Patient-1 told law enforcement that Vaughan then proceeded to taunt Patient-1 by repeatedly referring to her as "Washingtonville Mom," mentioning her son by name, and asking her how the "Wasingtonville mothers react[ed]" to the defendant's threats. Patient-1 feared for her safety and reported the defendant's conduct to the hospital staff.  Patient-1 also said that the defendant repeatedly asked other patients, including Patient-1, questions about getting an Uber to take black bags to church.[19]  The defendant would repeat the questions regularly while wandering the hallways at Four Winds and while attending group sessions.

### (ii)    *The Defendant's Threatening Behavior at Four Winds*

During the defendant's stay at Four Winds, he made various threatening statements to the staff at the hospital.  These threats included statements such as "You're on my hit list" and "I have a hit list."  Dr. Sarah Klagsbrun, the Medical Director of the Psychiatric Unit at Four Winds, reported these threats to the defendant's Pretrial Services Officer Leo Barrios on March 6, 2019. On March 11, 2019, Pretrial Services Officer Barrios submitted a Memorandum to Judge Smith regarding the defendant's troubling behavior at Four Winds, which is attached as Exhibit L.  The Memorandum noted the following: "On 3/6/2019, this officer received a telephone call from Dr. Klagsbrun, Medical Director of the Psychiatric Unit at Four Winds Hospital and she indicated that the defendant has been threatening staff at the hospital and advising them that they are on his 'hit list.' Dr. Klagsbrun expressed concern for the safety of her staff."  The Memorandum also noted that the defendant had not been complying with his conditions of release by, among other things, removing and hiding the batteries from his GPS device.  Also on March 11, 2019, Dr. Klagsbrun told law enforcement that the defendant threatened to harm or kill staff members at Four Winds and that the defendant made journal entries referencing staff members on his "hit list."

### (iii)    *The Defendant's Threatening Conduct at MDC*

While detained at the MDC, the defendant made a number of specific threats to kill various individuals and has expressed a desire to speak with an associate outside of MDC to help him

---

[18] In light of the fact that the Government only learned of the defendant's objections to the PSR on the evening of November 21, 2020, the Government respectfully requests that such a *Fatico* hearing be scheduled to allow the Government to produce the necessary pre-testimony discovery pursuant to Fed. R. Crim. Pr. 32(i)(2) and 26.2.

[19] As noted in the PSR, according to open-source materials, the Marjory Stoneman Douglas High School shooter took black bags in an Uber to the shooting.  (PSR ¶ 10).

achieve his plans.  The defendant also drafted a kill list,[20] which was recovered by law enforcement and which is attached hereto as Exhibit M.  The defendant's targets included AUSA Adelsberg, FBI Special Agent Melissa Zachariades, Pretrial Services Officer Leo Barrios, Dr. Klagsbrun, and members of the defendant's family, including his parents.  The targets also included Victim-1, labeled as a "snitch," and Victim-2.   On the back of the recovered kill list are a number of additional lists of school shooters and terrorists.  (*Id.*)

In addition to drafting the kill list, the defendant told another inmate at MDC ("Inmate-1") that he hid an AR-15 rifle, a 12-gauge shotgun, and other weapons in a lake near his home in Orange County, New York.   The defendant said that he obtained the weapons from a drug dealer who lived near the defendant.  The defendant also told Inmate-1 that once released, he planned to go to Indiana or Colorado to carry out a shooting against children in a school or movie theater.  The defendant identified a friend of his ("Friend-1") who would join him in executing the attack. The defendant told Inmate-1 that he was trying to communicate with Friend-1 by using another inmate's phone account.

The defendant also told Inmate-1 that he wanted to kill FBI Special Agent Melissa Zachariades, stating, "I want to fucking kill her."  The defendant said that he would murder Special Agent Zachariades while he transported him for a mental health evaluation.  The defendant told Inmate-1 that he would pretend that he had to urinate on the side of the road and then kill her while they pulled over.  The defendant told Inmate-1 that he hated his parents as well and wanted to kill them but that he was going to wait until they die naturally.  The defendant also provided Inmate-1 with search terms to Google on his behalf, including "Update on Nikolous Cruz Case," "Find out when is the last day of school for Washingtonville high school," "Google my FBI investigator last name to see what the bitch is Zachariades."[21]  A document in the defendant's handwriting with these search terms is attached hereto as Exhibit N.

    (iv)    *The Defendant's June 3, 2018 Statements*

As noted above, on June 3, 2018, law enforcement executed a search warrant at the defendant's residence arrested him on state charges.  Following his arrest, the defendant told an NYPD detective, "My plan was to follow [Victim-2] into his classroom and kick all the girls out and put all the boys against the windows so I can't get shot by the police, then kill him."[22]

## B.   Discussion

For the reasons that follow, the Government respectfully submits that an above-Guidelines sentence of incarceration, to be followed by three concurrent terms of three years' supervised

---

[20] The title of the document is "People I want to MKNN."  After alphabetically shifting MKNN two letters, the word reads KILL.

[21] The document also contains crossed out text below the search term referencing Special Agent Zachariades, which appears to state "is going to wish she never fucked with me."

[22] After being his informed of and waiving his *Miranda* rights, the defendant made a similar statement in a recorded interview on May 10, 2018, stating, "I have thought about hurting someone at the school.  His name is [Victim-2].  I was going to use him as a human shield."  (*See* PSR ¶ 31).

release, as well as the series of special conditions recommended by the Probation Department, is appropriate in this case.

### 1.        Applicable Law

The Guidelines are no longer mandatory, but they still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).  The Guidelines range is thus "the lodestar" that "'anchor[s]'" the district court's discretion. *Molina-Martinez* v. *United States*, 136 S. Ct. 1338, 1345-46 (2016) (quoting *Peugh* v. *United States*, 133 S. Ct. 2072, 2087 (2013)).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: "a) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for that offense; b) the need to afford adequate deterrence to criminal conduct; c) the need to protect the public from further crimes by the defendant; and d) the need for rehabilitation." *United States* v. *Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)).

### 2.        A Sentence Above the Guidelines Range Is Fair and Appropriate in this Case

The defendant's campaign of intimidation warrants a serious sentence of incarceration. The 18 U.S.C. § 3553(a) factors particularly applicable here include:  (1) the need for the sentence to reflect the exceptional nature of the defendant's conduct and to provide just punishment; (2) the need to protect the victims and the public from future crimes of the defendant; (3) the need to deter the defendant from continuing to make threats to the victims and others; and (4) promoting respect for the law prohibiting the making of interstate threats and to deter individuals similarly situated to the defendant from committing such crimes.  *See* 18 U.S.C. § 3553(a)(2)(A)-(C).  Each of these considerations weighs heavily in favor of an above-Guidelines sentence of incarceration.

***First***, **an above-Guidelines sentence of incarceration is warranted to reflect the exceptional nature of the defendant's criminal conduct and to provide just punishment.**  The defendant's conduct in this case was extraordinary in its duration and persistence, its breadth across multiple vectors, its escalation over time, and the significant fear it caused in the Washingtonville community.   His threats were both pernicious and persistent.  Contrary to claims made by the defendant in his submission, these threats do not appear to have been idle: he conducted disturbing searches about school shooters in the privacy of his home, researched the purchase of a weapon online,[23] and drafted a kill list while at MDC that included the name of his Pretrial Services Officer, a doctor that treated him, and the AUSA and FBI agent assigned to his case.  (PSR ¶¶ 22,

---

[23] Notably, the defendant's assertion in his submission that "[t]here is no indication he ever attempted to procure a firearm" (Def. Mem. at 16) is belied by the undisputed fact that he accessed a website that sells guns (and a listing for a gun for sale in NY) minutes after watching a video in which a school shooter indicated that he obtained weapons from that same website, (*see* PSR ¶ 33).

33).  Moreover, Vaughan continued, and indeed escalated, his threatening behavior in the face of state charges, federal charges, and numerous interactions with law enforcement and pretrial services.  In fact, it was *after* he was first approached by law enforcement in early May 2018 that Vaughan sent the May 31 Messages and the August Messages, made a hoax bomb threat, taunted law enforcement on social media, and lied to law enforcement officers, a Pretrial Services officer, and medical personnel.  (*Id.* ¶¶ 7, 13, 34, 42, 43, 102).

In support of his request for a sentence of time served, the defendant points to his age and mental health issues, arguing that because he "is still evolving through the normal process of maturation it will be easier for him to rehabilitate with the appropriate treatment." [24]   The Government is mindful of the defendant's mental health issues and has endeavored, at every juncture in this case, to help the defendant access appropriate services and medication.  Nevertheless, the Government notes that the defendant was under the care of a psychiatrist when he committed the offense conduct and that some of his most egregious behavior occurred at Four Winds, an in-patient mental health facility.  In fact, during his time at Four Winds, the defendant threatened medical personnel by advising specific staff members that they were on his "hit list," lied to his treatment staff, and only "superficially engaged in treatment."  (PSR ¶¶ 18, 102, *see also* Exhibit M).  He also placed a doctor from Four Winds on a "kill list" while at MDC, further demonstrating that his behavior will continue were he to be sent directly to a mental health facility.  (*Id.* ¶ 22).  Because the defendant's conduct suggests that mental health treatment alone will be insufficient to protect the victims and the community, an above-Guidelines incarceratory sentence is appropriate here.

**Second, and relatedly, an above-Guidelines sentence of incarceration is necessary to protect the victims and the public from future crimes by the defendant.**  The defendant is dangerous and continues to pose a risk to the victims, the Washingtonville community, and anyone he deems to have crossed him.  Indeed, only through the efforts of the FBI and local enforcement was the defendant prevented from executing the attack he had been planning to commit.  That such an attack did not occur is no safety guarantee for the victims.

For the past eleven months—because the defendant has been incarcerated—these victims have received some respite from the terror the defendant has caused them.  But even incarceration has not prevented the defendant from continuing his threatening behavior.  As noted above, while detained, the defendant made a "kill list" that included victims in the case, his former doctor, and members of his family, among others.  (PSR ¶ 22).  He also continued conducting research on

---

[24] The defendant also relies heavily on a report prepared Dr. Kate Termini, who concluded that the defendant qualifies for a diagnosis of Autism Spectrum Disorder and that with proper treatment, he would be a low risk of danger to the community.  (Def. Mem. at 2).  Notably, Four Winds, which treated the defendant in an in-patient capacity for three months, did not diagnose the defendant with Autism Spectrum Disorder.  Moreover, Dr. Termini reached her conclusion without conducting any cognitive and personality testing because the defendant "ha[d] undergone testing twice within the past six months."  (Def. Mem. at 38).  It also bears noting that while at Four Winds, the defendant repeatedly "lie[d]" to his treatment staff and "manipulate[d] the system," providing additional reason to doubt the defendant's candor in his interactions with Dr. Termini and thus her conclusions.  (PSR ¶ 102).

school shooters.  (*Id.* ¶ 23).  And in private correspondence, he demonstrated a lack of remorse and a refusal to take responsibility for his actions, claiming that his case is "a load of bullshit" and that he "didn't even do anything."  (*Id.* ¶¶ 24, 26).   In a case like this one, where the victims have experienced significant trauma, where the defendant's conduct has persisted—and in many ways worsened—despite law enforcement contact, and where the defendant continues to pose a risk to victims, a substantial sentence would allow the victims to rebuild their lives with some semblance of safety and security, without the fear that they will be threatened by the defendant.

Relatedly, the Government respectfully seeks three concurrent terms of supervised release of three years (for a total of nine years).  An extended period of supervision is particularly important in this case to provide the defendant with both adequate oversight and adequate support when he rejoins society.  Specifically, the Probation Department's supervision will be necessary to ensure that Vaughan ceases his terrorizing conduct once released to the community.  And given the defendant's mental health issues, the Probation Department can actively assist him in identifying and accessing the services he sorely needs.

*Third*, **an above-Guidelines sentence of incarceration is necessary to deter the defendant from continuing to threaten the victims and others.**  The defendant's crime was not a momentary lapse in judgment.  Rather, his criminal conduct was a calculated pattern of behavior designed to intimidate, threaten, and terrorize members of the Washingtonville community.  As described above, the defendant was undeterred after numerous contacts with law enforcement and after being arrested two separate times.  Because the defendant's conduct demonstrates a severe and sustained disregard for the law and for the lives of others, and because it appears that he has yet to accept responsibility for his actions, an above-Guidelines sentence of incarceration is necessary to achieve specific deterrence.

*Fourth*, **an above-Guidelines sentence of incarceration is needed to promote respect for the law, and to deter individuals similarly situated to the defendant from committing such crimes.**  The sentence in this case is of particular interest to the public.  In the wake of the many horrendous school shootings committed over the past few years, parents, school administrators, and students are increasingly alert to the possibility that that their community— indeed, their children—could be next.  These emotions profoundly affect communities across the nation, placing them in constant fear for their safety and security.[25]  The defendant, having methodically studied the actions of many past school shooters (*see id.* ¶¶ 23, 33), preyed on that profound sense of fear.  Even if he never intended to carry out an attack, which is not at all clear from his conduct, his threats and conduct terrorized members of the Washingtonville community.  That is the nature of such threats; given the stakes, they must be taken as viable and credible.  There is also a lasting emotional toll these threats take on the great number of people who live through them.  And the financial and human resources expended in responding to and deterring threats is also substantial, and depletes first responders resources that might actually be used to respond to

---

[25] *See, e.g.*, Jessica Grose, *Managing Fear After Mass Violence*, N.Y. TIMES, Aug. 6, 2019, https://www.nytimes.com/2019/08/06/parenting/parents-mass-shootings-anxiety.html;   *see also* Alia Wong, *When 'Back to School' Means Back to Mass-Shooting Fears*, THE ATLANTIC, Aug. 9, 2019, https://www.theatlantic.com/education/archive/2019/08/shootings-el-paso-dayton-add-kids-anxiety/595723/.

other pressing emergencies. An above-Guidelines sentence of incarceration—along with a substantial period of supervised release—will send a clear signal that these crimes are particularly harmful to the public and merit serious prison sentences.

## C.   Conclusion

For the reasons set forth above, a sentence above the parties' stipulated Guidelines range of 24 to 30 months' imprisonment, along with three concurrent terms of supervised release of three years, would be fair and appropriate in this case.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:  _____
Sam Adelsberg
Assistant United States Attorney
(212) 637-2494

cc:    Michael Burke, Esq.
        by ECF

# Exhibit A



# Washingtonville High School

## WASHINGTONVILLE CENTRAL SCHOOL DISTRICT
54 West Main Street, Washingtonville, NY 10992
PHONE 845.497.4000 • FAX 845.497.4004 • www.ws.k12.ny.us

| ADMINISTRATION | GUIDANCE DEPARTMENT | |
|---|---|---|
| Brian T. Connolly, *Principal* | Scott Lerner, *Guidance Chairperson* | |
| Scott Courter, *Assistant Principal* | Susan Cooney | Melissa Lynch |
| Robert J. Leonard, *Assistant Principal* | Jill Exarchakis | Eric Marburger |
| Kristin M. Shaw, *Assistant Principal* | Kimberly Kelly | |

December 12, 2019

Dear Honorable Judge Kenneth Karas,

My name is ▮▮▮▮▮▮▮ and I am the principal at Washingtonville High School. The Washingtonville Central School District is listed as a victim in the case involving Brendan Vaughan. I have been notified that Brendan Vaughan has recently pled guilty in this case. I would like to share with you the impact that this young man's actions have had, and continue to have, on our school, staff, students, community and myself.

I know you are very familiar with this person's actions and the evidence which has led to this guilty plea. As a principal, my greatest responsibility is the safety of our students and my biggest fear is a school shooting. That is exactly what Brendan Vaughan was planning. Fortunately, due to the outstanding work by the police and the F.B.I., this tragedy was averted.

When the threats against our school were discovered, it impacted everyone in our community. Parents, staff and students were terrified. These threats forced the district to take extraordinary precautions for safety while the student was out on bail. The precautions and costs were nothing in comparison to the fear, stress and anxiety this caused everyone. For those students who were the primary targets as well as their parents, the stress level was, and continues to be, unimaginable.

To give you an example of what it was like here in Washingtonville High School, I would like to describe what the graduation ceremony of 2018 was like. The boys who were the targets were scheduled to graduate. There were multiple meetings with law enforcement and parents in preparation for the event that is held outdoors. At the event, we needed over 20 members of law enforcement on grounds and in our building sweeping nearby areas and monitoring social media. I had an F.B.I. agent assigned to me who stood behind me for the entire ceremony. While we appreciated the support and protection, this is not what graduation is meant to be. This is one day. Over the last year and a half there have been numerous meetings and phone calls with the F.B.I. and law enforcement. I have been called late at night to be present for searches of our building when new information was presented.

Personally, this has had a dramatic impact on me and my family. There is nothing more important to me than the safety of my students. I cannot even measure the amount of hours I have spent dealing with this threat. It has taken me away from many important things at my school and, at times, has cost me time with my own family. That particular school year was difficult to start, but the events associated with Brendan Vaughan made it very difficult and it had an emotional and



# Washingtonville High School

**WASHINGTONVILLE CENTRAL SCHOOL DISTRICT**
54 West Main Street, Washingtonville, NY 10992
PHONE 845.497.4000 • FAX 845.497.4004 • www.ws.k12.ny.us

ADMINISTRATION
Brian T. Connolly, *Principal*
Scott Courter, *Assistant Principal*
Robert J. Leonard, *Assistant Principal*
Kristin M. Shaw, *Assistant Principal*

GUIDANCE DEPARTMENT
Scott Lerner, *Guidance Chairperson*
Susan Cooney      Melissa Lynch
Jill Exarchakis      Eric Marburger
Kimberly Kelly

physical impact on me. As a result of the stress and anxiety caused by my job, I spent a great deal of time in June and July of that year at the cardiologist. I recall one evening being out for dinner with my family. While we were eating, my wife, who is also a teacher in our building, turned white as a ghost and looked terrified. I quickly looked behind me and saw what she had seen: standing behind me was Brendan Vaughan. Now, mind you, it was probably coincidental, but what stood out to me most was the fear it created in my family. That is how our students, parents, and community have felt since this ordeal occurred. This is nothing in comparison to how the children who were the primary targets and their parents have felt. These boys are now in college and the military and they are afraid of what could happen upon Brendan Vaughan's release. Will they live in fear for the rest of their lives?

High school shootings are on the rise and in recent years we have seen tragedy after tragedy. School officials and law enforcement have been training and planning ways to prevent a tragedy from occurring in their schools. In this instance, the school and law enforcement did everything necessary to prevent a tragedy and probably saved many lives. What is the message we are sending if we prevent a school shooting only to allow the person responsible to be let free before he is rehabilitated even as he continues to make threats?

Being responsible for 1400 students and their safety is not an easy task and it is one that I consider to be my utmost priority. Now it is the responsibility of the judicial system to ensure our students and community's safety by handing out a sentence that fits this very serious crime and a sentence that has provisions to ensure our students' safety.

The efforts of law enforcement and the F.B.I. prevented the type of tragedy you see all too frequently in our country. Their efforts were tireless in preventing Brendan Vaughan from harming our students. My biggest fear is what will happen if he is let out before he is rehabilitated. I also wonder what message it sends to others who make or plan to threaten schools. It is a message that says people can threaten schools without the fear of repercussion.

I realize that in your position you have an extremely difficult decision to make. I hope, however, that the impact Brendan Vaughan's actions have had on our school and community weigh heavily on your decision.

Sincerely



# Exhibit B

December 21, 2019

Dear Honorable Judge Kenneth Karas,

My name is ███████████ and I am one of the victims of Brendan Vaughan. I would like to thank you for allowing me to express my feelings on how this case has had a tremendous impact on my life.

I consider myself very fortunate to have been raised in a small town. I live in a community where people truly care for one another. I have always felt safe in my home as well as in my school, until my last year of high school. Throughout my senior year I was being accused by Brendan Vaughan of doing and saying many different things that never occurred. I was in the principal's office on many different occasions and questioned. This caused me to miss a lot of classwork and ultimately had a negative effect on my education. I was unable to fully concentrate. Thankfully, when school officials did an investigation, they concluded that the defendant's accusations were all false. At this point it had caused a great deal of stress to myself and my parents. I did not feel safe around Brendan. A few months later the FBI came to my home, and my life completely changed.

The FBI told my parents and I that I was a target in a planned attack by the defendant. I have never felt unsafe in my own town until that moment. Although, I wasn't completely shocked because of things that Brendan had done leading up to this event. It was soon after this that I started becoming very anxious. I had never struggled with anxiety, so it was very scary. I thought about this often; it was always on my mind. I was constantly looking over my shoulder and checking my surroundings more than usual. Following this event, it was Senior Week at Washingtonville High School. That was one of the highlights of the year.  I thought that this would be the greatest time of my life but all I felt was anxious. Every day after that I couldn't stop thinking about it. That summer I was preparing to go away to college. It wasn't until I found out that Brendan was in jail that my mind was at ease. I attended one of Brendan's hearing this past summer. After hearing some of things mentioned in the courtroom, it seemed to me that Brendan wasn't doing well, and his behaviors did not change.

I will be going back to school mid-January. If Brendan is released without getting the help that he needs, this may cause an extreme amount of stress while I am away at school. I don't want this to have the same effect on my education as it did my senior year of HS. I don't want those feelings of being anxious all the time and constantly looking over my shoulder. I would like the opportunity to finish the next two and half years of college without worrying all the time. I am asking that Brendan is not released until he is well enough to never ever want to hurt anyone. I'm not sure if you could possibly imagine what it feels like being on list of someone wants to end your life. I am nineteen years old and I have a lot of life to live. Please allow me to live with a little less stress and a lot more peace.

Sincerely,



# Exhibit C

December 26, 2019

Honorable Judge Kenneth M. Karas,

My name is ████████████, father of ████████████, one of the intended targets of Brendan Vaughan's planned school shooting at Washingtonville High School. Thank you for allowing me to express the havoc and impact this attempt has had on me since that June 2018 day when local PD, NYPD and F.B.I knocked on my door.

My greatest job in life is to protect my wife and two sons. Not an easy job in society today especially when one of them had a target on their back. The fear, stress, anxiety, and sleepless nights this has caused has been brutal. I have spent thousands of dollars to secure our home with security cameras, video and still cameras, motion sensors all to help and reassure that my family is protected and safe. Unfortunately, I cannot control when they are out in society, but I try and assure them that all will be well.

When Mr. Vaughan was out on bail after his initial arrest, I explained to my family that we must have faith in our law enforcement, judicial system and this is all part of the process. Not something they wanted to hear, and the questions and txt have not stopped since. I completely understand their concern your honor because as you are aware Brendan had violated his bail conditions on multiple occasions and was arrested three more times. The rumors were running rampant in this wonderful tight community. I have received hundreds of phone calls and txt's regarding these events and my answer was always the same, let the process play out and have faith in our system. The fear among the residents was and still is alarming, imagine how I felt knowing the true details of Brendan's violations because I have been at every bail hearing.

After Vaughan's 2nd arrest in November of 2018 I realized that his young man never accepts responsibility for his actions and is never ever held accountable. I have seen this equation far too long. As a coach and active community member I have seen Brendan transfer from school to school, team to team and it was always everybody else's fault. When does this end? I have always given him the benefit of the doubt until he made a derogatory comment to my son about my brother who passed away in 1983. Yes, your honor 1983! I made multiple attempts via school administration to have a meeting with Brendan's parents to try and get to the bottom of the issue. It fell on deaf ears. You see Brendan may have an ax to grind with my family because my brother was romantically involved to Brendan's mother almost 40 years ago. What went on during that time I have no idea, I was a 14-year-old boy. This was odd to say the least but very concerning, what sort of venom was being spewed about a man that has been dead for 37 years? More importantly what business is this of my sons? Brendan's behavior while out on bail, wearing an ankle bracelet only worsened as you know he was arrested 2 more times for violating his conditions. This struck so much fear and anxiety into my everyday life that I was forced to leave my job as a top salesman in Manhattan to work in Orange County to be closer to my family in the event the defendant's threats became a reality. The financial

burden leaving NYC along with multiple trips to the cardiologist and gastrologist during these last couple years have been unimaginable.

I can't thank local law enforcement, NYPD Joint Terrorism Task Force and the F.B.I enough for countless hours of police work to finally put Brendan behind bars with no bail. This has temporarily given my family some relief knowing this young man is not walking the streets.  As a duty to warn the F.B.I informed me that Mr. Vaughan made another kill list in June of 2019 while incarcerated with multiple names and my son made the list again. As per the hearings I attended he was diagnosed as a homicidal sociopath. We hope he gets the help he needs.

There is a young girl who alerted law enforcement officials regarding Brendan's original social media post. If you are in this courtroom, I want to thank you for your courageous actions. This allowed law enforcement to thwart the attack on our community and school.

In closing I am aware that you have a difficult decision to make. I hope and pray that the havoc and impact the defendant has caused my family, me personally both financially, physically and emotionally and this entire community will weigh heavily on your decision.

Regards,



# Exhibit D

December 20, 2019

Dear Honorable Judge Kenneth Karas,

My name is ███████ and I am a parent of one of the victims who was targeted and continues to be targeted by the defendant Brendan Vaughan. Also, I am a Special Education Teaching Assistant in the Washingtonville Central School District. I was recently told that Brendan has pleaded guilty in this case. I would like to tell you how the actions of Brendan Vaughan have impacted my life.

In June Of 2018, the FBI came to my home to inform my husband and I that our son was an intended target in a planned attack against the Washingtonville CSD. Immediately tears filled up in my eyes, and I felt completely sick to my stomach. Unfortunately, this was not the first time we had heard about Brendan taking extreme measures to hurt someone.

Prior to this event, which began in 2017, my son was tormented by Brendan Vaughan. Brendan was making derogatory comments to my son as well as repeated false accusations about him. Due to Brendan's behavior my son was pulled from his classes on many different occasions to be questioned by school administrators. Fortunately, school officials did a complete investigation and found all accusations to be false. Unfortunately, my son missed class instruction (which had a negative effect on his education), his character was being damaged, and he started to become very anxious. He had expressed to me that he didn't feel safe in school. I immediately had a meeting with HS administrators and asked that my son be watched throughout the day by school security. It was then that we filed a DASA report against Brendan. At this time, we stopped receiving phone calls, our son was able to stay in class, but unable to fully concentrate, and I was extremely worried. I had expressed concern to my husband that something didn't feel right. It was months later that the FBI showed up at our home.

These events have had an extreme impact on my life in so many ways. My family is suffering. My son has recently shared with me that he has been dealing with a tremendous amount of anxiety. There have been times when he is unable to concentrate because it's all he can think about. In 2000, the year he was born, I made a conscious decision to stop working and stay home to raise my children. Being a mom is the absolute greatest gift in the world to me. I did my best to raise kind, caring, and compassionate boys. My husband and I will do anything to help our children if we can. Unfortunately, in this situation there isn't anything I can do except express how devastating it is to see your child in pain. My heart aches. In June of 2019, I went to one of Brendan's hearings. Soon after that I was not feeling well. I had been to several different doctors. It seems that worrying is making me very sick. Being a cancer survivor for three years now, I am also worry that all the stress and anxiety this case is bringing on will cause the cancer to reoccur. I also have a younger son who attends Washingtonville HS and works in the village. Brendan was spotted sitting outside on a bench where he works. Perhaps it was coincidence but also very scary. In addition to having my son in the HS, I work at Washingtonville MS. You can only imagine what goes through my head knowing that Brendan has made multiple threats to the district. These are my children. The boys that I've spent countless hours caring for. I feel the need to protect them but how can I in this situation? How can I reassure them that everything will be okay? What can I say to make it better? Why on earth would anyone want to hurt my son? I'm continuously asking myself these questions. I'm someone who likes to help others, but I feel completely helpless.

You see, I work with children who have special needs. Most of the students I've work with have had behavioral issues. I am extremely patient with them and try my best to help in any way I can, but I am not a doctor. I know that some of them need more than just a self-contained setting, but I continue to do everything I can. There have been times when I've come home crying to my husband because my heart breaks for them and this is exactly how I feel about Brendan. My heart does break for him because I'm not sure what has happened to him to make him so angry to want to hurt others. I know he has gone to multiple schools in several districts. He has had issues with other boys, but always claims it's their fault, and of course, bringing up things to my son that happened 30 plus years ago. Unfortunately, this has caused my husband to have to relive certain situations from his childhood, especially the loss of his two brothers. This ultimately causes pain to my entire family.

I know that this must be a very difficult decision for you. I hope, however, that you understand the impact that Brendan Vaughan has caused on my family as well as others in the community. What if Brendan is released without being well and hurts someone?  We were all so fortunate that a young lady was so courageous to come forward and make us aware of Brendan's intentions. Please allow Brendan to get the help that needs in a facility that will rehabilitate him. Please give us all a little peace of mind.


Sincerely,



Exhibit E



December 26th, 2019

The Honorable Kenneth Karas
United States District Court, Southern District
300 Quarropas Street
White Plains, NY 10601

Dear Honorable Judge Karas,

Your honor, I am writing to you regarding Brendan Vaughn's upcoming sentence. Throughout my teenage years I had a very close relationship with many of my friends that I had attended the Washingtonville school district with. I had planned on joining the service since I was fourteen, so me and my friends knew our time together was limited once senior year came about. Just two months before leaving for bootcamp I had an eerie feeling about something. When my friends and me had been followed by an account that was named after one of the columbine shooters, I knew it was something we shouldn't just let go. When I reported it to the school I wasn't sure what it was going to lead to, but I knew it was the right idea. It was only days later when everyone had found out the news that left the small town of Washingtonville completely terrified. At that point I was worried, but more for my friends and their families than myself due to the fact I was leaving in such a short time. This incident led to us consistently having hour long conversations regarding the situation. While at bootcamp I prayed for their safety everyday. They had updated me on the situation in each letter they sent me while I was away with minimal contact to the outside world.

As I have only been in New York for a total of a couple weeks since graduating high school, I still hear about Brendan Vaughn just about every week. I have only heard of some of the things he has done since the initial arrest, but I have no doubt in saying that I do not believe he has learned from his mistakes. I do believe Brendan can become a better individual, and I do think it will come with time and help. I also believe that this will leave the families effected and the town of Washingtonville at ease, while Brendan is given time to renew his thoughts and get on the right path. I do feel that the maximum sentence will not only help everyone affected, but also to get Brendan the time he needs to turn things around in which I believe you will make happen Your Honor.

Your Honor, thank you for taking my thoughts into your regards.

Very respectfully,

Corporal, USMC

# Exhibit F

12-28-19

District Judge
Honorable Kenneth M. Karas

Re: Brendan Vaughn

Dear Honorable Kenneth M. Karas,

I am writing to let you know of the psychological affect from the result of the above persons actions. Since this all started in ████ senior year of highschool, the fear of my son being threatened were all surreal. As our family prepared for happy and proud memories, we were forced into fear, anxiety and painful thoughts. We were afraid to be alone in our own home. Afraid to let ████ go to school. What should be a safe place for our children we now feared could turn into a massacre. Most of all, I feared my life would come to a halt if anything would happen to my youngest son. ████ is now a Marine and wishes to become a nurse someday. He is stationed far away for now but Brendans actions have not changed. I am also a nurse a feel that safety and health are most important. Please consider keeping Brendan out of the public so he is not capable of hurting someone.
Sincerely,

████████████

# Exhibit G



December 20th, 2019

The Honorable Kenneth Karas
United States District Court, Southern District
300 Quarropas Street
White Plains, NY 10601

Dear Honorable Judge Karas,

     Your Honor, today I am writing to you about Brendan Vaughn and his upcoming sentencing. Growing up in a small town called Washingtonville, never once in my life have I ever felt unsafe or unprotected, until May of 2018, my senior year of high school. I came home one day to an FBI agent and a Washingtonville detective at my house and from that moment, my life has changed dramatically. Hearing what law enforcement had discovered, was the scariest thing I have ever gone through in my life by far. At this point in my life I went from feeling safe everyday, having little to no worries, to having fear at all times and suffering from large amounts of anxiety to the point where I have had to attend therapy. Never have I been so stressed and worried like I have been for the past year and a half and honestly I don't know when it will stop. My family and I haven't been able to take a deep breath since hearing the news back in May of 2018. Not only could my friends and I have been harmed, but this situation had the chance to be a catastrophe to all of Washingtonville High School.

     Over the summer, after much thought and a lot of consideration, I decided to attend a court hearing regarding Brendan Vaughn. I heard many different events that took place after his arrest in 2018. After hearing everything in the courtroom, it's clear that he has not changed nor does he show any type of remorse. It seems as if his anger and hate have only increased during this time period. If Brendan were to get out on time served, there will be no peace to my family and this community. This community deserves justice after everything we have went through and the maximum sentence under the law, I believe, will do so Your Honor.

     Your Honor, thank you for taking the time out of your busy day to read this letter.

Best Regards,

# Exhibit H



December 10, 2019

The Honorable Kenneth Karas
United States District Court, Southern District
300 Quarropas Street
White Plains, NY 10601

Dear Honorable Judge Karas,

I am writing to you in regard to the upcoming sentencing of Brendan Vaughn. I am the mother of ▮▮▮▮▮▮▮▮▮▮, one of his victims. First, I would like to tell you how this has affected my life and the lives of my two children. On the day that we were notified of this plot, my then 13-year old son ▮▮ was innocently playing basketball in our driveway when an FBI agent and Washingtonville detective approached him and asked to speak to me and my son ▮▮▮▮▮. In the minutes that followed, our lives went from peaceful and innocent to fearful and anguished. The details of what had been carefully-plotted was absolutely frightening. As a NYPD detective myself for 19 years, I'm well-versed in these dark realities; my sense of security and peace of mind has been taken from me and my family because of Brendan Vaughn- so much so that both my children were in therapy to address their anxiety and related issues. I sincerely believe that if this plot was not brought to the attention of law enforcement, the lives of more innocent people would have been affected.

My son ▮▮▮▮▮ and I have attended court hearings and have heard some of the incidents that occurred after Brendan's initial arrest. It was obvious that he has not taken responsibility, nor is he acting as if he has changed in any way.  In fact, he seems more agitated and aggressive. I fear that if released, Brendan will continue his sociopathic behavior, further endangering this community. A sentence of time served is not justice an certainly will not ease the fears of this community, myself or any children. Your Honor, <u>I am asking for the maximum sentence under the law.</u> My family and this community deserve peace and security in knowing that Brendan Vaughn will be placed in a facility where no harm can come to us or anyone else,

Thank you, Your Honor, for taking the time to read this letter and for the difficult job that you do.

Respectfully,



# Exhibit I



December 20, 2019

The Honorable Kenneth Karas
United States District Court, Southern District
300 Quarropas Street
White Plains, NY 10601

Dear Honorable Judge Karas,

I am writing you regarding the upcoming sentencing of Brendan Vaughn. I am the stepfather of ████████████, who was a target in his plot. This has affected our entire family in many ways. It has brought fear, anxiety and uncertainty to us all. ████ and his younger brother ███ have asked many times what I thought would happen in this case and if they would be safe. These are questions I can not truthfully answer. The younger boy ███ asks of Brendan Vaughn's whereabouts before walking to town or school in fear that he may have an encounter with him. The amount of stress that this sinister plot has brought our family is very disturbing and unfair. We are in constant fear that Brendan Vaughn will someday carry out his plan to inflict pain on us and others in our community.

Your Honor, I ask that you take our family's fears in to account when Brendan Vaughn is before you for sentencing. I ask that he be sentenced to the maximum allowable sentence for the crimes he has been charged. Although we may never be able to have closure in this case, some peace of mind for my family and community knowing that he is in a secure facility would be greatly appreciated.

Thank you, Your Honor, for your consideration.

Respectfully,



# Exhibit J

12/23/19

Honorable Kenneth M. Karas
Federal Building and United States Courthouse
300 Quarropas St
White Plains, N.Y. 10601-4150

Your Honor,

My name is ███████████. I am the
parent of ███████████ who was named
a victim in the Brendan Vaughan case.

I am writing to you to address my
concerns on this case. Due to the threats
Brendan has made against harming Nicholas, his
friends and the Washingtonville School, I am
deeply afraid and very concerned for my sons
safety and the kids in my community. Brendan
obviously has serious issues that cannot
be ignored nor should he be free to
roam around. He can not be trusted.
My family at this point does not feel
safe knowing that there is a possibility
of Brendan being released.

Sincerely,

████████████████

Case/Docket # 19-CR-00526 (Court)
             2018R01285 (Case)

# Exhibit K





# Exhibit L

**MEMORANDUM**

Date:   **March 11, 2019**

To:    **Hon. Lisa Margaret Smith**

       **U.S. Magistrate Judge**

From:  **Leo Barrios**
       **U.S. Pretrial Services Officer**

Re:    **Brendan Vaughan**
       **18 M 9807**

---

Pretrial Services submits this report to update the Court on the defendant's compliance since the last bail hearing that was conducted on 1/7/2019 where the Court modified the defendant's bail conditions to include the following:

-Defendant's residence may be searched by LE as previously ordered but to also include searches for electronic devices

-Not permitted to continue education

-Travel to WP hospital today for a psychiatric evaluation for the purposes of assessing his own safety

-Subject to home incarceration (leave for court, attorney, personal medical)

-Permitted alternative location is an inpatient psychiatric hospital

-Not permitted to use the telephone or be in possession of a cellular telephone

-Any WIFI at the residence must be cancelled

-No friends at the residence

-Continue to take all medications as prescribed

-Participate fully in MH evaluations and answer all questions truthfully

-Federal agents shall provide victim IDs and contact information to PSA

-Defendant permitted to take GED on 1/22 but may not use a computer

-All other previously set conditions remain in effect, however the following conditions were eliminated:

-Continue education
-Use of computer for school purposes only

On that same day, the defendant was taken to the emergency room of White Plains Hospital for a psychiatric evaluation and the following day, he was transferred to Four Winds Hospital where he remains hospitalized.

It should be noted that as part of the Location Monitoring GPS Program Agreement, the defendant is required to charge his GPS as instructed and replace the battery. This Officer has repeatedly called the hospital to instruct them to have the defendant charge his GPS.  On 2/8/2019, this officer traveled to Four Winds Hospital and spoke to the nurse on duty, as well as the social worker and provided them with an additional charger as well as a third battery so that the defendant can always have a charged battery.  During the visit, this officer met with the defendant and again instructed him to change his battery every nine hours and right before he goes to sleep. Additionally, he was told to comply with all conditions of bail and the treatment plan.

On 3/2/2019, this officer received a telephone call from nurse Tamantha White at Four Winds Hospital. She stated that the defendant was hiding one of the batteries and that he refused to change the battery. This officer spoke to the defendant and advised him of the consequences of non-compliance and shortly thereafter, the defendant replaced the GPS battery.

On 3/10/2019, our office received another telephone call from the hospital indicating that the defendant stated he had lost a battery. To date, hospital staff has been unable to locate the battery.

In addition, the defendant's behavior at Four Winds hospital has been concerning to this Officer and staff at the hospital. On 1/28/2019, Four Winds advised of an incident where the defendant was hiding in the woods and calling out for cops to arrest him while on a walk outside. Hospital staff also reported that the defendant has discussed the possibility of escaping and leaving without obtaining medical clearance. Throughout the defendant's hospitalization, our agency has been advised by treating staff that the defendant is not taking treatment seriously.  Hospital staff have also advised that they do not have a forensic psychiatrist on staff that can assist in his treatment and planning and that presently, the defendant is not receptive to treatment.

On 3/6/2019, this officer received a telephone call from Dr. Klansburn, Medical Director of the Psychiatric Unit at Four Winds Hospital and she indicated that the defendant has been threatening staff at the hospital and advising them that they are on his "hit list." Dr. Klansburn expressed concern for the safety of her staff.  This Officer inquired if the hospital has rules regarding searches of his bedroom to which Dr. Klansburn noted that the hospital is seeking advice from hospital counsel regarding this matter.

It is our understanding that the defendant's attorney, Michael Burke has requested a hearing where he may seek to have the defendant's bail be rescinded for the purposes of arranging a forensic psychiatrist evaluation while incarcerated.  Pretrial Services respectfully submits this memorandum for Your Honor's information and review. Both AUSA Samuel Adelsberg and defense counsel, Michael Burke have been apprised of this matter.

Respectfully Submitted,

Scott Kowal, Chief

U.S. Pretrial Services Officer

Leo Barrios
U.S. Pretrial Services Officer

Reviewed by:

_____
Cynthia Labrovic, SPSO

# Exhibit M

People I want to MKNN

1) ~~[crossed out]~~ Melissa Zachariades (Bit
2) ████████████ (Snitch)
3) Samuel Adelsburg (Kike)
4) Dr. Klugsburn (Kike)
5) Parents (Hate there Guts)
6) Sister (Bitch)
7) Leo Barrios (Spick)
8) ~~[crossed out]~~ ████████████ (Asshole)
9) ████████████ (Ugly)
10) ~~[crossed out]~~ ████████████ (Nigger)

Brendan
~~[crossed out]~~

2 1 Kole Loshavo
3 2 Mark Pryylocki
4 3 Brendon Sheehan
5 4 Spencer Strauck

~~TOP 5~~ TOP 5 SS

1) Eric Harris
2) Dylan Klebold
3) Nikolaus Cruz
4) Dimitrios Satrogubus
5) Adam Lanza

TOP 5 MS

1) James Holmes
2) Randy Stair
3) Jarred Loughtner
4) Dylan Roof
5) Eliot Rodger

TOP 5 I

1) Ted Kacynski
2) Timothy McVeigh
3) Terry Nicholas
4) Ramzi Youseff
5) Eric Rudolph

TOP 5 SK

1)
2)
3)
4)
5)

# Exhibit N

Brendan Vaughan

Things I need you to Google

Asap * • Update on Nikolaos Gruvy case

Asap * • Update on Dimitrios Satrogoulous case

• Google my name "Brendan Vaughan" and see if there is anything new's

• Google "Warwick teen vandilyes Jewish cemetery" and see if he got YO

• Find out when is the last day of school for "Washingtonville high school"

Asap ** • Bulls Basketball Club AAU

Asap *** • Google "16 year old arrested for threatening high school orange county ny"

• Google my FBI investigator's last to see what the bitch #is ZACHARIADES(~~████~~)
~~████████████████~~